Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
Panel XII

| ROSA CEPEDA FALÚ y OTROS<br>Peticionaria<br><br>v.<br><br>METRO PAVÍA HEALTHCARE CENTERS, INC. y OTROS<br>Recurrida | TA2026CE00541 | *Certiorari* procedente del Tribunal de Primera Instancia, Región Judicial de Bayamón<br><br>Civil Núm. BY2023CV00529<br><br>Sobre:<br>Impericia Médica |

Panel integrado por su presidente, el Juez Candelaria Rosa, el Juez Adames Soto y el Juez Campos Pérez

Adames Soto, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 10 de junio de 2026.

Acude ante nosotros la señora Rosa Cepeda Falú y otros (peticionarios), a través de recurso de *certiorari,* solicitando la revocación de una *Resolución* emitida por el Tribunal de Primera Instancia, Región Judicial de Bayamón, (TPI), de 25 de abril de 2025. Mediante dicho dictamen interlocutorio el foro primario denegó la solicitud de los peticionarios para incluir un perito de refutación, Dr. Andrés Romero, por cuanto no había sido anunciado de manera oportuna y, el presunto informe de refutación que se pretendía presentar a través de este no era tal sino un nuevo informe pericial.

Contrario a ello, nos propone la parte peticionaria que, tomando como punto de partida el precedente establecido por nuestro Tribunal Supremo en *Rivera Gómez v. Arcos Dorados de Puerto Rico, Inc.*, 212 DPR 194, 209 (2023); incidió el foro primario al no permitirle la inclusión del referido perito y su informe, cuando no había concluido el descubrimiento de prueba.

Tienen razón los peticionarios, expedimos y revocamos.

## I. Tracto procesal pertinente

El 31 de enero de 2023 los peticionarios instaron *Demanda* por daños y perjuicios contra los recurridos de epígrafe, por presunta negligencia médica.

Atendidas varias incidencias procesales, que incluyeron el desistimiento de la causa de acción contra sendos codemandados y la anotación de rebeldía a otros, los codemandados restantes presentaron sus respectivas contestaciones a demanda.

Sin embargo, el 24 de agosto de 2023, el TPI emitió *Sentencia* paralizando administrativamente el proceso hasta aquí seguido, en tanto uno de los codemandados, Centro Médico del Turabo, Inc., había instado una petición de quiebras. Determinó el foro primario que la paralización afectaba a la totalidad de las partes en el pleito, de modo que declaró tal estado de las cosas, hasta que otra cosa determinara.

Entonces, informado el Tribunal por la parte peticionaria que había obtenido una Orden de la Corte de quiebras permitiendo la continuación de este proceso, el foro primario emitió *Resolución interlocutoria* el 3 de febrero de 2025, reconociendo el levantamiento de la paralización aducida, y ordenando la reanudación de los asuntos. En la misma fecha el tribunal *a quo* emitió otra *Resolución,* concediéndole a los peticionarios hasta el 1 de abril de 2025 para informar el nombre de sus peritos, cuyo término advirtió, era perentorio.

De manera oportuna, el 27 de marzo de 2025, los peticionarios instaron *Moción en cumplimiento de orden,* informando el nombre de su perito, Dr. Edwin Miranda Aponte.

Luego, el 5 de mayo de 2025, fue celebrada una vista para la *Conferencia inicial.* En lo que nos concierne, la parte peticionaria informó que había notificado de su informe pericial a los recurridos, y la prueba documental correspondiente, e hizo salvedad de que, "se reservaría el

perito en caso de que surja algo en el descubrimiento de prueba".[1] Por su parte, los recurridos indicaron que habían separado "el 15 de julio de 2025 para deponer a la parte demandante, el 29 de agosto de 2025 se producirá el informe pericial de la parte codemandada y el 3 de octubre de 2025 se depondría al doctor Miranda perito de la parte demandante. Falta escoger fecha para la deposición de las doctoras".[2]

Informados tales asuntos por las partes, la *Minuta* donde se recogieron las incidencias de la vista revela que Tribunal determinó lo siguiente: "el 29 de agosto de 2025 sería la fecha para el informe pericial de la parte demandada. De no poder cumplir, se deberá solicitar una prorroga (*sic*) antes de que venza el término. A preguntas del Tribunal, los codemandados informaron que no será el mismo perito, serán varios peritos. El Tribunal expresó que sería el mismo término para todos los codemandados. **Se concedió hasta el 14 de noviembre de 2025 para culminar el descubrimiento de prueba**. Se extendió el término y se concedió hasta el 15 de enero de 2026 para las mociones dispositivas y 20 días para las oposiciones".[3] (Énfasis provisto).

Habiendo el TPI emitido no pocas *Órdenes* para atender asuntos relativos al descubrimiento de prueba, fue celebrado el *Status Conference* el 6 de octubre de 2025. Según la *Minuta* donde se plasmaron las ocurrencias de esta vista, luego de las partes informar al Tribunal el estatus del descubrimiento de prueba, se dejó constancia de lo que sigue: "La licenciada Sánchez solicita al tribunal extender el descubrimiento de prueba **hasta el 15 de diciembre de 2025** para cubrir las deposiciones sin atrasar la Conferencia con Antelación a Juicio señalada. No habiendo oposición por los abogados ante la solicitud hecha por la licenciada Sánchez, **el tribunal concede el término perentorio hasta el 15 de diciembre de 2025 para finalizar el**

---

[1] Entrada Núm. 101 de SUMAC.
[2] *Íd.*
[3] *Íd.*

**descubrimiento de prueba**. Las partes tendrán hasta el 15 de enero de 2026 para presentar mociones dispositivas y contarán con 20 días para las oposiciones. El tribunal mantiene el señalamiento pautado para la Conferencia con Antelación a Juicio y Vista Transaccional el 16 de abril de 2026. El Informe de Conferencia debe presentarse con 10 días de antelación y la prueba documental se discutirá durante la vista".[4] (Énfasis provisto).

No obstante, llegada la fecha pautada para finalizar el descubrimiento de prueba, las partes comparecieron mediante *Moción conjunta* para solicitar una prórroga a dicho término; "para realizar el descubrimiento de prueba que nos resta relacionado al descubrimiento de prueba pericial. Para esto, del Tribunal acceder a nuestra petición, hemos separado los siguientes días: 18 de febrero de 2025 a las 10:00 a.m. para la deposición del Sr. Jorge Adorno Concepción; 19 de febrero de 2025 a las 10:00 a.m. para la deposición del Dr. Edwin Miranda, perito de la parte demandante; 20 de febrero de 2025 a las 10:00 a.m. para la Dra. Erika Lamourt; 25 de febrero de 2025 a las 10:00 a.m. para un representante del Metro Pavía Clinic Bella Vista. **Hasta el 19 de marzo de 2026 para notificar los informes periciales de los demandados**. 14 de mayo de 2026 para las deposiciones de los peritos de los demandados. **Solicitamos, por tanto, que se nos conceda hasta el 30 de mayo de 2026** para completar el descubrimiento de prueba".[5] (Énfasis provisto).

Atendida dicha solicitud, el 15 de diciembre de 2025, el TPI accedió a lo solicitado en la *Moción conjunta*, extendiendo el término para concluir el descubrimiento de prueba, aunque imponiéndole a la parte recurrida una sanción de trescientos dólares por infracción al término para presentar los informes periciales y coordinar las deposiciones

---

[4] Entrada Núm. 141 de SUMAC.
[5] Entrada Núm. 142 de SUMAC.

resultantes. Además, el TPI le advirtió **a los recurridos** que otro incumplimiento sobre este asunto conllevaría la exclusión de la prueba pericial que se dispusieran a presentar. Por último, el mismo foro recalcó que esta extensión al término del descubrimiento de prueba sería final.[6]

Ante lo cual, el 18 de marzo de 2026, los recurridos instaron sendas mociones informando la notificación del informe de su perito, Dra. Nieves Cabán.

Es así como, el 22 de abril de 2026, los peticionarios instaron la *Moción al expediente* que dio origen a la controversia que nos corresponde dirimir. En la moción aludida los peticionarios informaron al Tribunal: haberles enviado a los recurridos el informe pericial rendido por el Dr. Andrés Romero, infectólogo; la disposición de dicho perito para ser despuesto el 14 de mayo de 2026, que era una fecha previamente escogida por las partes para la celebración de deposiciones en este caso.[7]

De cualquier modo, lo cierto es que, el 23 de abril de 2026, los recurridos instaron una *Moción en oposición y solicitando que se elimine el perito anunciado*. Arguyeron como causas para eliminar dicho perito: que ya le habían tomado deposición al único perito anunciado por los peticionarios durante el caso, el Dr. Edwin Miranda, generalista que se ha dedicado a sala de emergencia; entendían que, de haber un informe de refutación, se notificaría antes del 14 de mayo, y/o al menos dentro del periodo que quedaba para el descubrimiento de prueba, y en principio, no tenían objeción; el denominado informe de refutación no lo era, sino que era un informe nuevo que tendría que estudiarse tanto por la Dra. Migdalia Nieves, emergencióloga (perito de la Dra. Erica Lamourt), como por el Dr. Francisco Alvarado, infectólogo (perito de Metro Pavía Clinic Bella Vista); la presentación de dicho informe, a escasos días de culminarse el descubrimiento de prueba, causaría un perjuicio procesal

---

[6] Entrada Núm. 144 de SUMAC.
[7] Entrada Núm. 164 de SUMAC.

real y sustancial a las partes demandadas; el tema abordado en el informe del doctor Romero no surge de manera inesperada, ni responde a hechos nuevos, y ha estado presente desde las etapas iniciales del litigio.[8]

No obstante, o a su vez, en la misma moción en oposición a la inclusión del perito de refutación, la parte recurrida incluyó la siguiente expresión: "*En la alternativa,* solicitamos que se nos conceda una breve extensión del período de descubrimiento de prueba, hasta el 22 de julio de 2026, con el fin de que los demandados, pudiesen estudiar el informe pericial y deponer al Dr. Romero. En el contexto del estado procesal del caso, una breve extensión para descubrir prueba en conexión con este nuevo perito no conllevaría un retraso significativo en el trámite del caso, ni ocasionaría un perjuicio indebido a ninguna de las partes envueltas en el caso.[9]

En réplica a la petición de eliminación del perito de refutación, la parte peticionaria llevó a la atención del TPI que: había ya advertido con anticipación la posibilidad de un informe pericial de refutación una vez recibidos los informes periciales de los recurridos; a los 23 días de que los recurridos presentaran el informe pericial de su perito les notificó a estos el informe pericial de refutación; tal notificación a los recurridos del informe de refutación ocurrió previo a la conclusión del término para descubrir fecha y proveyendo fecha para deponer al perito sin infringir dicho término; el perito de los recurridos no estaba disponible para ser depuesto dentro del término de descubrimiento de prueba, de modo que no podían sostener la alegación de que aceptar el informe pericial de refutación causaría perjuicio; el informe sí es de refutación, en tanto no introduce teorías nuevas, causas de acción distintas ni fundamentos independientes, sino que se limita a analizar, cuestionar y controvertir

---

[8] Entrada Núm. 166 de SUMAC.
[9] *Íd.*

las conclusiones alcanzadas por los peritos de la parte demandada a la luz de la misma evidencia clínica; **la exclusión de prueba pericial constituye una de las sanciones más severas en nuestro ordenamiento procesal y solo procede en circunstancias extraordinarias de perjuicio real, sustancial e irreparable.**[10]

Como adelantamos en la introducción, mediante *Resolución* de 25 de abril de 2025, el TPI se decantó en favor de la eliminación del perito de refutación, Dr. A. Romero, que propuso la parte peticionaria. Al así decidir el respetado foro primario razonó que tal informe pericial no refería propiamente a una refutación del informe pericial de los recurridos, sino que más bien se trataba de prueba nueva que, por serlo, tenía que ser anunciada de manera oportuna. Junto a lo cual, también denegó una nueva extensión al término para descubrir prueba.[11]

Es este el dictamen que nos corresponde revisar y cuya revocación nos solicita la parte peticionaria, aduciendo que la determinación recurrida se apartó del precedente establecido en *Rivera Gómez v. Arcos Dorados*, supra, al: excluir prueba pericial a pesar de que no había concluido el descubrimiento de prueba; existir deposiciones pendientes; a pesar de que el perito de refutación estaba hábil para ser depuesto dentro del término de descubrimiento de prueba; no demostrarse perjuicio alguno de ser admitido.

Los recurridos comparecieron oponiéndose a la solicitud de *certiorari* presentada. Juzgan que no deberíamos intervenir con el dictamen recurrido pues "la parte anunció nuevo perito luego de expirado el término conferido por el foro inferior para listar peritos y pretende utilizar el subterfugio de la "refutación" para que le sea permitido, luego de llevar dos (2) años representándole al Tribunal y a las partes que su descubrimiento de prueba estaba prácticamente terminado

---

[10] Entrada Núm. 167 de SUMAC.
[11] Entrada Núm. 168 de SUMAC.

quedando pendiente únicamente las deposiciones de los codemandados y sus peritos", y, "el informe de este nuevo perito no que se limita a analizar, cuestionar y controvertir las conclusiones alcanzadas por el Dr. Miranda, sino que introduce causas y teorías nuevas y diferentes. Permitir este nuevo perito considerando que el caso lleva tres (3) años presentado y que múltiples partes que ya han invertido tiempo y honorarios considerables sería un fracaso a la justicia y un claro perjuicio a las demandadas recurridas.[12]

Con relación al fundamento principal presentado por la parte peticionaria para solicitar nuestra intervención, que el TPI no se atuvo a aplicar el precedente establecido en *Rivera Gómez v. Arcos Dorado*, supra, los recurridos se limitaron a aducir de manera muy escueta que "Ciertamente, el caso de la Sra. Cepeda Falú es distintito (*sic*) ya que trata de prueba pericial adicional no anunciada fuera del término dispuesto para hacerlo. Y que permitirla sería de grave perjuicio para las recurridas y en detrimento del calendario del Tribunal y el norte de economía procesal".[13]

Estando pendiente tales asuntos ante nuestra consideración, el 19 de mayo de 2026, el TPI emitió otra *Resolución* en este caso, disponiendo lo que sigue: "**Se extiende nuevamente el descubrimiento de prueba hasta el 31 de julio de 2026**. Igualmente, se extiende hasta el 31 de agosto de 2026 el término para presentar mociones dispositivias (*sic*). Se puntualiza que los términos son finales, por ende, las representaciones legales respectivas y los peritos pendientes de deponer deben hacer los arreglos pertinentes para cumplir con este calendario final".[14] (Énfasis provisto).

---

[12] Escrito en oposición a *certiorari*, págs. 10 y 14.
[13] *Íd.*, pág. 22.
[14] Entrada Núm. 181 de SUMAC.

## II. Exposición de derecho

a.

El efectivo funcionamiento de nuestro sistema judicial, y la rápida disposición de los asuntos litigiosos, requieren que los jueces de instancia tengan gran flexibilidad y discreción para lidiar con el diario manejo y tramitación de los asuntos judiciales. *In re Collazo I,* 159 DPR 141, 150 (2003). Es por ello que a éstos se les ha reconocido poder y autoridad suficiente para conducir los asuntos litigiosos ante su consideración y para aplicar correctivos apropiados en la forma y manera que su buen juicio les indique. *Íd.* El Tribunal de Primera Instancia tiene el deber ineludible de garantizar que los procedimientos se ventilen sin demora, con miras a que se logre una justicia rápida y eficiente. *In re Pagani Padró,* 181 DPR 517, 529 (2011), citando a *Heftler Const. Co. v. Tribunal Superior,* 103 DPR 844, 846 (1975).

Entre tales asuntos litigiosos en los cuales se ha reconocido la discreción del TPI se encuentra la fase de descubrimiento de prueba, teniendo amplia discreción para regularla, pues es su obligación garantizar una solución justa, rápida y económica del caso, sin ventajas para ninguna de las partes. *Cruz Flores et al. v. Hosp. Ryder et al.,* 210 DPR 465 (2022). Por lo tanto, al momento de limitar el descubrimiento de prueba de acuerdo con las Reglas de Procedimiento Civil, los tribunales deberán hacer un balance entre estos dos intereses. *Rivera y otros v. Bco. Popular,* 152 DPR 140, págs. 154–155.

Claro, lo anterior debe partir del principio general de que, en cuanto al alcance del descubrimiento, impera una política de que *debe ser amplio y liberal. Rivera Gómez v. Arcos Dorados P.R., Inc.,* supra; *Cruz Flores et al. v. Hosp. Ryder et al.,* 210 DPR 465 (2022); *McNeil Healthcare v. Mun. Las Piedras II,* 206 DPR 659, 672 (2021).*

En el mencionado *Rivera Gómez v. Arcos Dorados P.R., Inc.*, supra, nuestro Tribunal Supremo expresamente reconoció la referida discreción del TPI para determinar y disponer sobre el calendario en el que discurra el descubrimiento de prueba, **no obstante, también advirtió que la eliminación de un testigo esencial es una sanción extrema a la que solo se podrá recurrir, luego de la imposición de sanciones económicas**. En específico, el alto foro llamó la atención a que "la medida severa de excluir del juicio el testimonio de un testigo crucial [o de un perito esencial, que es análoga a la medida extrema de la desestimación, solo debe usarse en circunstancias excepcionales [...]". *Íd.*; *Valentín v. Mun. de Añasco*, 145 DPR 887, 895 (1998).

Se abundó en la misma Opinión al identificar al perito como "una persona que, a través de la educación o experiencia, ha desarrollado un conocimiento o destreza sobre una materia de manera que puede formar una opinión que sirva de ayuda al juzgado". *Rivera Gómez v. Arcos Dorados P.R., Inc.*, supra; *S.L.G. Font Bardón v. Mini-Warehouse*, 179 DPR 322, 338 (2010). En ese sentido, "[c]omo cualquier otro testigo, la función del perito es dar a conocer la verdad, derivada de su conocimiento especializado". *San Lorenzo Trad., Inc. v. Hernández*, 114 DPR 704, 709-710 (1983). Cónsono con esto, **el derecho a presentar prueba en apoyo de una reclamación constituye uno de los ejes centrales del debido proceso de ley**. (Énfasis provisto). *Rivera Gómez v. Arcos Dorados P.R., Inc.*, supra.

## III. Aplicación del derecho a los hechos

### a.

En lo pertinente, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52, autoriza a este Tribunal de Apelaciones a revisar mediante la expedición del recurso de *certiorari*, resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, cuando se recurre de *decisiones sobre la admisibilidad de testigos de hechos o*

*peritos esenciales*. El asunto ante nosotros precisamente nos invita a intervenir con una decisión sobre la admisibilidad del alegado perito de refutación presentado por la parte peticionaria, de modo que estamos habilitados para ejercitar nuestra discreción al expedir el recurso de *certiorari* solicitado.

b.

La interrogante que nos toca responder se reduce a lo siguiente: vista la etapa procesal del caso antes nuestra atención; ¿abusó de su discreción el foro recurrido al denegar la solicitud de la parte peticionaria para presentar un perito de refutación y el informe redactado por este?

Juzgamos que la respuesta que ofrezcamos a tal pregunta debe iniciar desde el reconocimiento al principio de liberalidad que debe dirigir las determinaciones sobre el descubrimiento de prueba. Cabe reconocer que, aunque corresponde al foro primario dirigir tales asuntos, en tanto ubica dentro de su amplia discreción, no es menos cierto que la dirección al encarar la determinación sobre exclusión de un perito **anunciado en un momento previo a la conclusión del descubrimiento de la prueba** y faltando aún testigos por deponer por la parte presuntamente perjudicada con la admisión de tal testigo, debió ir informada por el precedente establecido en nuestra jurisprudencia, específicamente según concebido en *Rivera Gómez v. Arcos Dorados de P.R.*, supra.

Semejante a como ocurrió en el trámite procesal que dio lugar a la Opinión aludida, al momento en que los peticionarios solicitaron la inclusión del perito de refutación **no había concluido el descubrimiento de prueba**. Más favorable aún para la causa de los peticionarios, y distinto a *Rivera Gómez v. Arcos Dorados de P.R.*, supra, en el caso ante nuestra consideración el TPI accedió una vez más a extender la fecha final para concluir el descubrimiento de prueba, luego de haber denegado la admisión del doctor Romero como perito de refutación de los peticionarios.

A ello añadimos que no apreciamos que la admisión del referido perito suponga un daño tal a la parte recurrida y el proceso, cuando faltaban testigos por deponerse y el término del descubrimiento de prueba resultó, una vez más, extendido luego de que se excluyera al Dr. A. Romero.[15] En este sentido, llevado a cabo el ejercicio de poner en balanza el interés legítimo del Tribunal por velar por la celeridad de los procesos, versus el de la parte promovente de la causa de acción de poder presentar prueba en apoyo a su reclamación, juzgamos que el razonamiento esbozado en *Rivera Gómez v. Arcos Dorados de P.R.*, supra, debió inclinar la balanza en este caso en favor de permitir el testigo propuesto.

Sépase, además, que tampoco observamos negligencia o intención de retrasar los procesos en la conducta procesal mostrada por la parte peticionaria, anterior a la solicitud de incluir al Dr. A. Romero como su testigo de refutación. Muy al contrario, el tracto procesal exhibe una parte demandante-peticionaria diligente en los procesos, que ha logrado acuerdos con los recurridos para solicitar extensiones al descubrimiento de la prueba, no ha sido sancionada por incumplimiento alguno con el calendario dispuesto por el Tribunal (a distinción de los recurridos), y que ha velado por no afectar los términos instruidos anteriores al juicio.

Por otra parte, no resultaba irrazonable la solicitud de los peticionarios para presentar un perito de refutación, al cabo de haber conocido el contenido del informe pericial que recién le descubrieron los recurridos. Sobre lo mismo, juzgamos coherente la alegación de los peticionarios en términos de haber estado en posición de solicitar prueba de refutación, solo cuando recibieron el referido informe pericial de los recurridos, máxime cuando, insistimos, la solicitud de inclusión de un

---

[15] En modo alguno estamos interpretando que el razonamiento expuesto por el Tribunal Supremo en *Rivera Gómez v. Arcos Dorados de P.R.*, supra, requiera siempre del TPI admitir prueba pericial si es incluida antes de que concluya el descubrimiento de prueba. Como es de suponer, nuestra determinación responde únicamente al tracto procesal particular de este caso, según lo hemos precisado.

perito de refutación aconteció sin que hubiese finalizado el descubrimiento de prueba y poniendo a disposición dicho perito para ser depuesto, sin afectar el calendario establecido.

Si, como es evidente, la exclusión del perito de refutación de los peticionarios por TPI respondió a la legítima preocupación de evitar la irrazonable extensión de los procesos, por la posible inclusión de teorías o causas nuevas a través de dicho testigo, cuenta el foro recurrido con herramientas suficientes **para limitar tal prueba al único fin para la que fue propuesta, el de refutación**.

En definitiva, incidió el foro recurrido al no permitir la inclusión del perito e informe de refutación solicitado por los peticionarios.

**IV.  Parte Dispositiva**

Por las razones explicadas, expedimos el recurso de *certiorari* y revocamos la *Resolución* recurrida. A tenor, ordenamos devolver el asunto al Tribunal de Primera Instancia para que se continúen los procesos conforme a las directrices aquí impartidas.

Lo pronunció y manda el Tribunal y lo certifica su Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones